UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

CARL ROMANO, III,

    Plaintiff,

v.

LIBERTY MUTUAL HOLDING
INSURANCE COMPANY,

    Defendant.

CIVIL ACTION NO. 4:18-cv-02318

(SAPORITO, M.J.)

## MEMORANDUM

This matter is before the court on the motion for summary judgment as to the stacking issue (Doc. 23) filed by the defendant, Liberty Mutual Holding Insurance Co. For the reasons set forth herein, we will deny the motion.

### I.  *Statement of Facts*[1]

The plaintiff, Carl Romano, III, was involved in a two motor-vehicle accident on October 26, 2016, on West Fourth Street, Williamsport, Lycoming County, Pennsylvania. At the time of the accident, the tortfeasor had an automobile insurance liability limit of $100,000.

---

[1] The facts of this case are taken from the statement of undisputed material facts and answer thereto. (Doc. 24; Doc. 28).

Romano was insured under a policy of automobile insurance (the "policy") issued by the defendant which was in effect at the time of the accident and provided for underinsured motorist benefits (non-stacked) in the amount of $100,000. Romano settled his third-party claim against the tortfeasor with the consent of the defendant.

At the inception of the policy in May 2013, there were two vehicles insured under the policy. On May 21, 2013, Romano rejected stacking by signing a rejection of stacking form. It is undisputed that he signed the rejection form. On August 9, 2016, the plaintiff added a 1974 Chevrolet El Camino (the "El Camino") to the policy. This was an additional vehicle and not a replacement vehicle. At the time of the addition of the El Camino, Romano did not sign a new rejection of stacking form. At the request of Romano's insurance agent, the El Camino was added to the policy effective August 9, 2016. Romano alleges that the El Camino was added to the policy before the actual purchase of the vehicle thereby increasing the number of cars on Romano's policy to three vehicles. (Doc. 28-1). No other policy of insurance applies to the El Camino other than the subject policy. The defendant filed its motion for summary judgment

as to the stacking issue which has been briefed by the parties. (Doc. 23; Doc. 25; Doc. 29). The motion is ripe for disposition.

## II. Legal Standards

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes

such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. Thus, in evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is

inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### III. Discussion

We begin our analysis with the presumption under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") that intra-policy stacking of underinsured motorists (UIM) coverage[2] applies unless the insured waives such coverage by executing a stacking waiver. 25 Pa. Cons. Stat. Ann. §1738(a)-(d); *State Auto Prop. & Cas. Ins. Co. v. Pro Design P.C.*, 566 F.3d 86, 89-90 (3d Cir. 2009). The MVFRL provides as follows:

> When more than one vehicle is insured under one ... polic[y] providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor

---

[2] Intra-policy stacking of UIM benefits refers to the multiplication of the limits of UIM coverage under a single automobile insurance policy by the number of vehicles insured by that policy.

> vehicle as to which the injured person is an insured.

75 Pa. Cons. Stat. Ann. § 1738(a). Nevertheless, "a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured." *Id.* § 1738(b). The statute further requires that:

> [e]ach named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

*Id.* § 1738(c). Pennsylvania law thus presumes that stacking applies unless an insured waives it by executing a stacking waiver containing the language provided in § 1738(d).

Under the subject policy, the definition of "your covered auto" means "Any newly acquired vehicle, whether operational or not, on the date you become the owner, subject to ... **Newly Acquired Additional**

**Vehicle** ... below." (Doc. 24-5, at 1) (Emphasis in original). A "Newly Acquired Additional Vehicle" is defined as follows:

> For any newly acquired vehicle that is in addition to any shown in the Declarations coverage shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition. Coverage shall be the broadest coverage we provide for any vehicle shown in the Declarations. This coverage applies only if:
>
> a. you acquire the additional vehicle during the policy period shown on the Declaration; and
>
> b. there is no other insurance policy that provides coverage for the additional vehicle.
>
> If you wish to add or continue coverage you must ask us to insure the additional vehicle within thirty (30) days after you acquire the additional vehicle. The thirty (30) days of coverage includes the day you acquire the vehicle.

(*Id.*).

The defendant's motion for summary judgment is limited to the issue of whether the defendant was required to obtain a new UIM stacking waiver from Romano to reduce Romano's UIM coverage from a stacked limit of $300,000 to an unstacked limit of $100,000. However, Romano states that the El Camino was never covered as a newly acquired additional vehicle because insurance was purchased on the vehicle by

7

way of endorsement on the same date just prior to Romano's actual purchase of the vehicle.[3] (Doc. 28, ¶17; Doc. 28-1).

In addition to the MVFRL legislation referred to above, an after-acquired vehicle analysis, as it relates to a waiver of stacking, requires us to be informed by the *Sackett* trilogy. In *Sackett I*, the Pennsylvania Supreme Court held that when a named insured adds a vehicle to an existing policy and where stacked coverage had previously been waived under 75 Pa. Cons. Stat. Ann. §1738(c), the insurer must obtain a new signed waiver form from the insured or suffer default to stacked UM/UIM coverage limits. *See Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194 (Pa. 2007). In *Sackett I*, the court held that "when a new car is added to an existing policy and UM/UIM coverage is purchased insurers must provide new §1738(d) stacking waivers in order to permit the insured to waive the increased amount of available stacked UM/UIM coverage." *Id.*

---

[3] In his affidavit, Romano states that he was required to obtain insurance before purchasing the vehicle because it was an antique vehicle. (Doc. 28-1 ¶3). In his brief, Romano does not cite to any statutory authority for insuring an antique vehicle before the purchase of it, nor are we aware of any such requirement. This fact, however, is not dispositive of the issue before us.

8

at 196-97. *Sackett I* made an interesting observation about purchasing UIM coverage for a third vehicle prior to its acquisition:

> The [insureds] could not have purchased [UIM] coverage for the [third vehicle] *prior* to its acquisition, because they would have had no insurable interest related to it ... [, i.e., they] could not purchase [UIM] coverage for an automobile they had not yet acquired.... Section 1738(c), read as a whole, makes it clear that an insurer must provide a stacking waiver each time a new vehicle is added to the policy because the amount of coverage that may be stacked increases.

919 A.2d at 201-02. Despite this observation, it is undisputed that the El Camino was added to Romano's policy. We must determine whether the El Camino was added by endorsement or through the newly acquired additional vehicle clause in the policy, and further, whether the defendant was required to obtain a new signed waiver form from Romano.

In *Sackett v. Nationwide Mut. Ins. Co.* (*Sackett II*), 940 A.2d 329 (Pa. 2007), the Court modified *Sackett I* after rehearing, a decision brought about by the Pennsylvania Insurance Commissioner's concern as to the effect that *Sackett I*'s "central conclusion that the addition of a new vehicle to an existing multi-vehicle policy unambiguously constitutes a new purchase of coverage" might have on the "newly acquired vehicle

9

clause." *Sackett II*, 940 A.2d at 331. There, the Court clarified *Sackett I* as follows:

> To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, ... we clarify that *Sackett I* should not disturb the effect of an initial UM/UIM stacking waiver obtained in connection with a multi-vehicle policy. Again, our reasoning is that the term "purchase," as specially used in Section 1738, does not subsume such adjustments to the scope of an existing policy containing such terms.
>
> We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers.

940 A.2d at 333-34. Thus, if an insurer extends coverage to an insured's new vehicle on a pre-existing policy pursuant to an after-acquired vehicle clause, then the insurer does not have to obtain a new stacking waiver from the insured. *Sackett II*, 940 A.2d at 334. Pennsylvania law thus makes clear that the inquiry into whether stacking cases are governed by *Sackett I* or *Sackett II,* and consequently whether a new stacking waiver is required, depends upon the scope of the language of the after-

10

acquired-vehicle provision. *Seiple v. Progressive N. Ins., Co.*, 568 Fed. App'x 183, 186 (3d Cir. 2014).

In *Sackett v. Nationwide Mut. Ins. Co. (Sackett III)*, 4 A.3d 637 (Pa. Super. 2010), the same parties continued to litigate the case from the rulings in *Sackett I* and *Sackett II*. In *Sackett III*, the trial court conducted a non-jury trial and declared that the Sacketts could stack the UIM benefits under Nationwide's policy for a total of $300,000—$100,000 for each of the Sacketts' vehicles. Nationwide contended that it was not required to have the Sacketts sign new waivers upon the acquisition of the new vehicle. The Sacketts maintained that new waivers were required because the new vehicle was added to the policy by an endorsement. On appeal, the Superior Court of Pennsylvania agreed with the Sacketts. In doing so, it looked at the after-acquired vehicle clause and determined that it was "expressly made finite by the terms of the policy," thereby making *Sackett I* the controlling law in the case requiring new waivers. *Id.* at 640. For example, the Superior Court noted that the Nationwide after-acquired vehicle clause applied only if the Sacketts did not have other collectible insurance and it was inherently finite providing "coverage . . . only during the first 30 days."

*Id.* Because the Sacketts added coverage for the new vehicle on their existing policy through an endorsement, the court found that they obtained other "collectible insurance." *Id.*[4]

The newly acquired additional vehicle clause at issue here is similar to the clause in *Sackett III*. For example, here the clause states that "coverage applies only if there is no other insurance policy that provides coverage for the additional vehicle." (Doc. 24 ¶17). Further, coverage was purchased for the vehicle under an Antique Auto Endorsement. (Doc. 24-4, at 3). Also, the terms of the after-acquired vehicle clause are finite ("For any newly acquired vehicle that is in addition to any shown in the Declarations[,] coverage shall apply for the first thirty (30) days after you acquire the vehicle...."). (Doc. 24-5, at 1). Thereafter, "you must ask us to insure the additional vehicle within thirty (30) days after you acquire the vehicle." (*Id.*). Like the vehicle in *Sackett III*, the El Camino was added to the policy through an endorsement. The policy change was effective August 9, 2016—the date of the purchase. (Doc. 24-1). Thus, under the factual scenario presented here, it is apparent to the court that

---

[4]     In *Sackett III*, Nationwide conceded that coverage was added by an endorsement and not by way of the after-acquired vehicle clause. *Id.* at n.3. Here, the defendant does not make the same concession.

the El Camino was added to the existing policy on the day of its purchase and not through the newly acquired additional vehicle clause in the subject policy which was never triggered. No further action was necessary to add the vehicle to the policy.

The parties have cited several cases in reliance upon their respective positions. The defendant relies upon: *Seiple*, 568 Fed. App'x 183 (3d Cir. 2014) (*Sackett III* does not create a *per se* rule that vehicles added by endorsement require new stacking waivers without regard to the language in the after-acquired clause); *Powell v. Allstate Prop. & Cas. Ins. Co.*, Civil Action No. 13-5721, 2014 WL 3573139, at *8–*9 (E.D. Pa. July 21, 2014) (concluding that the plaintiff's vehicle was added to the policy via a continuous after-acquired clause and rejecting the plaintiff's argument that the amended declarations page, which reflected the addition of the vehicle, was an endorsement); *Mitchell v. Progressive Preferred Ins. Co.*, Civil Action No. 3:14-0384, 2015 WL 5762927, at *3 (M.D. Pa. Sept. 29, 2015) (holding that the vehicle was added to the policy via a continuous after-acquired vehicle clause and no new waiver form was required); and *Kuhns v. Travelers Home & Marine Ins. Co.*, 760 Fed. App'x 129, 132–33 (3d Cir. 2019) (affirming the district court's conclusion

that "neither the adding of the fourth vehicle to the declarations sheet, nor the issuance of that sheet, triggered [the insurer's] contractual duty to extend coverage to the [insured's] newly-acquired vehicle. Instead, its duty was triggered by the policy's after-acquired vehicle clause," and holding that the insurer was not required to secure a new waiver form).

Romano relies upon: *Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872 (Pa. Super. 2014) (en banc) (holding that a fourth vehicle was added via endorsement and the insurer needed to obtain a new waiver, where the plaintiff informed her insurance agent that she wanted the vehicle added to the policy and the addition was reflected in an amended declarations page); *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481, 490 (Pa. Super. Ct. 2017) (concluding that the additional vehicle was added via an endorsement and the insurer had to secure a new waiver, where the plaintiffs requested proof of coverage for a vehicle prior to purchase and the agent faxed the plaintiffs an amended declarations page reflecting coverage of that vehicle); and *Barnard v. Travelers Home & Marine Ins. Co.*, 216 A.3d 1045, 1051 (Pa. 2019) (concluding that an insurer must offer an insured the opportunity to waive stacking of UIM coverage limits whenever the insured purchases UIM coverage "for more

than one vehicle under a policy.") *Barnard* was certified to the Pennsylvania Supreme Court from the U.S. Court of Appeals for the Third Circuit. *See Barnard v. Travelers Home & Marine Ins. Co.*, No. 18-1456, 2018 WL 9708889 (3d Cir. Nov. 27, 2018). The Third Circuit certified the case because the answer to whether an insured makes a "purchase" of underinsured motorist insurance when the insured increases coverage, requiring a written waiver, "cannot be drawn with confidence from the reported cases." *Id.* at *2.[5]

We find *Bumbarger* to be most similar to the facts in our case. In *Bumbarger*, the plaintiff was issued an automobile policy from the insurer which provided motor vehicle coverage for two vehicles. The policy also provided for UM/UIM motorist coverage, but the plaintiff executed forms validly rejecting stacking of UM/UIM coverage in compliance with the MVFRL. Two months later, the plaintiff purchased a third vehicle and she requested her insurance agent to add the third vehicle to the policy. The third vehicle was added to the policy through a

---

[5] The Third Circuit also stated that the "answer would be of help to insurance carriers as they would know the scope of their obligation to obtain waivers from insureds with respect to stacking when increasing UIM coverage." *Id.*

validly executed endorsement effective the date of the purchase of the vehicle. When the plaintiff added her third vehicle to the policy, she executed an endorsement of the original policy, titled a "Policy Changes Summary." That endorsement indicated she had non-stacked uninsured coverage for the new vehicle. After an accident with an uninsured driver, the plaintiff sought stacked coverage of the uninsured motorist coverage, despite the validly executed rejection of stacked coverage at the inception of the policy. The Superior Court of Pennsylvania held that when an insured takes ownership of a vehicle and simultaneously informs his insurer of the new vehicle, the language and purpose of the after-acquired vehicle provision in the policy is never triggered. *Id.* at 878.

In the facts of our case, Romano added the El Camino to the existing policy on the day of its purchase through his insurance agent. (Doc. 28-1). The defendant issued a new "Automobile Policy Declarations" conspicuously noting a "POLICY CHANGE CHANGED EFFECTIVE: Aug. 9 2016." (Doc. 23-1, at 1 and 3). The defendant also included a transmittal letter dated August 9, 2016, confirming that the El Camino was added to the policy informing him that the additional premium was $149.32, and the letter also enclosed an Antique Auto Endorsement.

(Doc. 23-4). Thus, we find that under the facts of this case, the defendant was required to obtain new UIM stacking waivers when Romano added a vehicle to the policy simultaneously with the purchase of the El Camino. We will deny the defendant's motion for summary judgment.

An appropriate order follows.

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: January 7, 2021